**KEY v. MINNETONKA LBR. CO. et al.**

No. 14766—Opinion Filed July 7, 1925.

Rehearing Denied Nov. 17, 1925.

**Judgment—Refusal to Vacate Default on Ground of Absence of Attorney.**

Where an attorney fails to appear at the time his case is regularly assigned for trial and, out of courtesy to him, the case is reassigned for trial at a later day in the term and he again fails to appear, and fails to notify the court or opposing counsel of his inability to appear, and the case is reassigned to a later day in the term, and he again fails to appear and, on being called over the telephone by opposing counsel and requested to appear, the case is tried in his absence, it is not an abuse of discretion on the part of the trial court to refuse to vacate the judgment upon the ground that he understood from the telephone conversation that the case would be further postponed, where such agreement is denied by opposing counsel.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Okfuskee County; John L. Norman, Judge.

Action by Minnetonka Lumber Company, a corporation, against Oklahoma Consolidated Producing Company, a corporation, C. A. Lewis, and J. B. Key. Judgment for plaintiff, and defendant J. B. Key appeals. Affirmed.

Fred M. Carter, for plaintiff in error.

Phillips, Douglass & Duling and Catlett & Catlett, for defendants in error.

Opinion by RAY, C. This suit was commenced in the district court of Okfuskee county, in July, 1922, by the Minnetonka Lumber Company against the Consolidated Producing Company, a corporation, J. B. Key, and C. A. Lewis, to recover for materials furnished and labor performed in the construction of two derricks on oil and gas mining leases, and to foreclose its lien. The petition contained two causes of action. In the first cause of action, it was alleged that the materials were furnished and labor performed on one lease, and in the second cause of action that they were furnished upon another lease. The defendant J. B. Key, the only defendant complaining, answered by general denial. After issues joined, the cause was regularly assigned for trial on the 24th day of February, 1923. The plaintiff and its attorneys appeared for trial, but neither the defendant J. B. Key, nor his attorney, Fred M. Carter, both of whom were nonresidents of Okfuskee county, made an appearance. On being informed by an Okmulgee attorney, who appeared in the case for another defendant, that it was impossible for Mr. Carter, attorney for J. B. Key, to be present, the case was reset for trial on the 3rd day of March. At that time the plaintiff and its attorneys again appeared for trial, but no appearance was made for the defendant J. B. Key. Plaintiff's attorney then put in a long distance call for Mr. Carter, attorney for J. B. Key, at his office in Okmulgee, and was informed by someone in the office that Mr. Carter had gone to Sapulpa that day to try a lawsuit. Out of courtesy to Mr. Carter the case was then continued to March 6th. On the morning of March 6th, one of the attorneys for plaintiff again called Mr. Carter over the telephone at his office in Okmulgee, and was informed by Mr.

Carter that he was sick with the "flu" and could not with safety drive through the inclement weather from Okmulgee to Okemah, a distance of 35 miles, and asked that the case be postponed till a later date. On being informed that March 6th was the last day of the term for jury trials, Mr. Carter suggested that he would waive a jury and try the case at any time satisfactory to the court and counsel for plaintiff when he could be in Okemah. Mr. Carter then induced another attorney of Okmulgee, who was representing another defendant, to call plaintiff's attorney over the phone and ask him to agree to waive a jury. The other attorney complied with that request and understood from the telephone conversation that the trial would be postponed until a later day in the term and so notified Mr. Carter. Neither Carter nor his client, J. B. Key, appeared for trial. The attorney for plaintiff, not understanding that the case was to be postponed, waited until late in the afternoon of March 6th, when the case was called for trial, and judgment recovered for the plaintiff.

On learning that judgment had been entered, the defendant J. B .Key, by his attorney, Fred M. Carter, filed a motion to vacate the judgment rendered upon the first cause of action upon two grounds: First, that the defendant J. B. Key had no interest in the oil and gas lease described in the first cause of action, and for that reason a personal judgment should not have been taken against him; and, second, that the lien statement was not filed within the time required by the statute, and for that reason the lien was improperly foreclosed. As grounds for vacating the judgment upon the second cause of action, it was alleged that the oil and gas lease was owned, a nine-tenths interest by J. B. Key Oil & Gas Company, a corporation, and a one-tenth interest by the defendant J. B. Key; that they had entered into a contract with the Oklahoma Consolidated Producing Company, a corporation, to drill a well upon the lease for an undivided one-half interest in the lease as compensation for drilling the well to a depth of 3,000 feet and equipping same, and that the contract for labor and material furnished by plaintiff was with the Consolidated Producing Company and not with the defendant J. B. Key, and for that reason the plaintiff was not entitled to a personal judgment against him. As ground for vacating the judgment upon both causes of action, it was alleged that Fred M. Carter, attorney for the defendant J. B. Key, was ill with the "flu" at Okmulgee on the 6th day of March, when judgment was rendered, and unable to be in attendance, and that in a telephone conversation between Mr. Carter and the attorney for plaintiff on the morning of March 6th, it was agreed that the case would be tried at a date later in the term agreeable to the court and attorney for plaintiff when defendant's attorney, Fred M. Carter, could be in Okemah.

April 13th, under a rule of the court under which attorneys were authorized to call up motions made by opposing counsel upon notice, plaintiff's attorney gave notice that the motion to vacate the judgment would be called upon the regular motion day, April 19th, and mailed a copy of the notice to Mr. Carter's address in Okmulgee. April 14th, before the notice had reached Mr. Carter, he and his wife left Okmulgee for Kansas City to have some dental work done. Carter's law partner, Mr. Buckholts, received the notice, but not knowing Mr. Carter's post office address in Kansas City, was unable to get it to him promptly. April 16th, the attorneys for plaintiff, in a long distance telephone conversation with Mr. Buckholts, Mr. Carter's partner, informed him that the motion would be taken up on the morning of the 19th, the regular motion day. Mr. Carter was notified by Mr. Buckholts by telegram of the situation and Mr. Carter insisted that the hearing should be postponed until he returned, the 21st or 22nd of April. April 19th, the day the motion was regularly set for hearing, and neither the defendant J. B. Key, nor his attorney, having appeared, the motion to vacate the judgment was denied. Later a hearing was had on application of the defendant J. B. Key, by his attorney, Fred M. Carter, to vacate the order of April 19th, and the court, after hearing all the evidence, stated that he had confidence in both attorneys and would not decide the question of veracity, but stated that the controversy grew out of an unfortunate misunderstanding, and entered an order vacating the order of April 19th, and then, after a full hearing again denied the motion to vacate the judgment and denied the defendant J. B. Key's motion for a new trial, from which the defendant J. B. Key appeals, and contends that there was an abuse of discretion upon the part of the trial court in denying the defendant's motion to vacate the judgment.

Plaintiff in error, in his brief, contends that the statement of the trial court, "I think the trouble comes about by an unfortunate misunderstanding of the circumstances surrounding the matter," is conclusive that the trial court abused its discretion. A complete answer to that contention is that the record discloses that the quota-

tion is from language of the court used in giving his reason for vacating the order of April 19th. In that matter the court ruled in favor of the contention of Mr. Carter, attorney for the defendant J. B. Key, and vacated the order of April 19th. The language was not used in connection with the court's ruling upon the motion to vacate the judgment. To hold, as contended by plaintiff in error, that the court abused its discretion in refusing to vacate the judgment of March 6th would be to hold that a trial court is without power to direct and dispose of the business of the court in any orderly way.

Plaintiff in error, in his brief, says the judgment of the lower court "is contrary to the basic principles of American jurisprudence and shocks the very soul of justice." We think to the contrary. Plaintiff and his attorney had been regularly in attendance upon the court at the time the case was set for trial. It is not made to appear that Mr. Carter, or his client, at any time notified the opposing counsel or the court in advance of their inability to appear. March 6th, when the case was tried, it is true, was a disagreeable day to drive through the country 35 miles, and no doubt it would have been dangerous to the health of Mr. Carter to have done so, but the evidence shows that these different postponements required one of the attorneys for plaintiff to drive an equal distance through the same weather to be present when the case was called upon that day, and it is not made to appear that Mr. Carter or his client sought to save him that disagreeable trip by notifying him of his inability to appear. The record discloses that all the communications had between the attorneys on the opposing sides were brought about by the attorneys for plaintiff, who desired to have their case disposed of at that term of court and who did not desire to take a judgment in Mr. Carter's absence, and that, in no instance, did Mr. Carter call them or make any attempt to notify them in advance of their appearance in court of his inability to be present. While, as this court has always held, it is important for every litigant to have an opportunity to properly present his case and to have his day in court, that right does not belong to the defendant exclusively, but belongs equally to the plaintiff.

It is contended from the showing made that it is clear that the plaintiff was not entitled to a personal judgment against the defendant J. B. Key for the materials furnished and labor performed for the reason that he had no interest in the oil and gas lease. We think that is a defense that should have been disclosed, if true, by the pleading filed in the cause. The answer filed by him was a general denial and contained no disclaimer of an interest in the lease property. The evidence taken at the trial on March 6th is not contained in the record.

We think there was no abuse of discretion on the part of the trial court, and the judgment is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 34 C. J. p. 315, § 535; p. 365, § 580.